IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID J. MCNAIR                                                                               PLAINTIFF

      v.                                      Civil No. 13-3076

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff, David McNair, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") and supplemental insurance benefits ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

The Plaintiff filed his application for DIB and SSI on November 22, 2010,  alleging an onset date of November 3, 2010, due to diabetes, neuropathy, and coronary artery disease.  Tr. 113-126, 163, 177-178, 189, 192, 195-196, 212-213.  His claims were denied both initially and upon reconsideration.  Tr. 53-70.  An administrative hearing was then held on November 16, 2011.  Tr. 25-52, 71-76.  Plaintiff was both present and represented at that hearing.

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, Plaintiff was 39 years old and possessed a high school education. Tr. 28, 113, 163. He had past relevant work ("PRW") experience as a truck driver, river guide and cook, plumber, mayor, and communication technician. Tr. 28-40, 164, 169-176.

On May 4, 2012, the Administrative Law Judge ("ALJ") concluded that, although medically determinable, Plaintiff's diabetes mellitus, neuropathy, and coronary artery disease did not constitute severe impairments. Tr. 16-20.

The Appeals Council denied Plaintiff's request for review on June 11, 2013. Tr. 1-5. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 15, 17.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence,

and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.     The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

AO72A
(Rev. 8/82)

### III. Discussion:

Plaintiff contends that the ALJ erred in terminating his analysis at step two of the sequential evaluation process. We disagree. The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

In support of his argument, Plaintiff asserts that SSR 99-3p provides that "any medically determinable impairment will be considered 'severe.'" However, his reliance on this Ruling is misplaced. SSR 99-3p explains that "[i]f an individual age 72 or older has a medically determinable impairment, that impairment will be considered to be 'severe'." *See* SSR 99- 3p, 1999 WL at *1, 3. Plaintiff was only 38 years old on his alleged onset date. Tr. 28, 113. *See Parrish v. Colvin*, No. 12-3115, 2013 WL 5434611, at *2 (W.D.Ark. Sept. 27, 2013) (noting that SSR 99-3p applied only to individuals age 72 or older and the claimant was 57 at the time of the hearing). Accordingly, SSR 99-3p does not apply in this case.

Plaintiff also contends that his diabetes, neuropathy, and coronary artery disease were severe, as they were "well established by the record." A medically determinable impairment or combination of impairments is "severe" within the meaning of the Act if it imposes significant restrictions on a claimant's ability to perform basic work activities, which are the abilities and aptitudes necessary to do most jobs, including physical functions, as well as mental functions such as the capacity for understanding, carrying out, and remembering instructions, and using judgment. 20 C.F.R. §§ 404.1520(c), 404.1521(b), 416.920(c), 416.921(b); SSR 96-3p, 1996 WL 374181. An impairment is non-severe if it is a slight abnormality or combination of slight abnormalities that have no more than a minimal effect on the ability to do basic work activities.

4

20 C.F.R. §§ 404.1521, 416.921; *see also Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001). It is Plaintiff's burden to establish a severe impairment, and although severity is not an "onerous requirement," severity is also not a "toothless standard." *Kirby*, 500 F.3d at 707-708. A mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). Further, alleged impairments may not be considered severe when they are stabilized by treatment or otherwise unsupported by the medical record. *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000).

According to the record, Plaintiff was diagnosed with type II diabetes mellitus in February 2008. Tr. 365. Dr. Michael Hodges provided him with follow-up treatment during the relevant time period. In November 2009, Dr. Hodges noted that Plaintiff was stable on insulin and dietary intervention, though he was not walking as much as he would like and did not have a structured exercise program. Tr. 278-280. Plaintiff denied any new or non-healing wounds or loss of sensation, and was compliant with follow-up treatment. A physical examination also revealed intact sensation and a normal gait, with no abnormalities noted. Later in the month, after a brief hospitalization for a blocked intestine and gastroenteritis, Plaintiff followed up with Dr. Hodges. Tr. 286-289. At this time, there were no diabetic concerns and his physical exam was unchanged. Dr. Hodges again assessed his diabetes as stable and with satisfactory control via insulin and dietary intervention.[2] *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

---

[2]It is significant to note that during this time period when Plaintiff was compliant with treatment and his diabetes stable, he earned $25,064.25 in 2008, $23,290.44 in 2009, and $23,622.81 in 2010. Tr. 135, 151

5

Plaintiff did not seek further treatment for his diabetes until November 2010, at which time he reported problems with elevated blood sugar, leg pain, and fluctuating weight. Tr. 298-300, 317-319. His most recent HgA1c level was significantly elevated at 11 percent. Dr. Hodges again noted that Plaintiff was not walking as much as he would like and had no structured exercise program. And, he indicated that Plaintiff had not been compliant with his medication regimen, dietary plan, exercise recommendations, or his follow-up treatment schedule. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility). Plaintiff denied any new or nonhealing wounds or loss of sensation in his extremities, and an examination revealed no abnormalities with intact sensation to light touch in his extremities. Dr. Hodges prescribed Glucophage and Pravastatin.

In early December, Plaintiff returned in follow-up. Tr. 303-305, 322-324. Although his blood sugar levels had improved, Plaintiff complained of muscle weakness and pain, headaches, fatigue, intolerance to medications, and numbness and tingling in his feet. He also reported sneezing, nasal congestion, a sore throat, and a cough. Dr. Hodges assessed him with diabetes with neurological manifestations. He prescribed Doxycycline.

In late December, Plaintiff returned reporting problems with hyperglycemia. Tr. 306-308, 325-327. Again, he reported no new or non-healing wounds or loss of sensation in his extremities. And, Plaintiff specifically denied experiencing tingling or numbness. Although Plaintiff still was not walking as much as he would like and had no structured exercise program, Dr. Hodges noted him to be compliant with medication regimen and follow-up. He then prescribed Neurontin.

6

There are no further records of treatment with Dr. Hodges until Plaintiff appeared at the hospital in May 2011 with complaints of chest pain, and was seen by Dr. Hodges. Tr. 419-421. However, Plaintiff did participate in research at St. Jude Hospital in March 2011 as part of the St. Jude Life Study to learn how treatment for cancer he received as a child in 1979 affected how the brain functions as an adult, and examinations and tests were performed as part of this research, but this does not appear to have been for purposes of treatment.[3] Tr. 333-357, 363-418. In fact, the doctors noted that Plaintiff was being followed by his primary care physician. Tr. 341. A physical exam was essentially normal with a normal range of motion, normal strength, no tenderness, no swelling, and a normal gait, as well as a normal visual exam of the feet and no apparent neurological deficits. Tr. 336-339. The doctor did recommend that he see an endocrinologist and mentioned the possibility of the endocrinologist prescribing an insulin pump as the best option for glucose control. He noted, however, Plaintiff's past refusal of said pump. A CT bone densitometry revealed borderline elevated bone mineral density and significant atherosclerotic disease within the abdominal aorta. Tr. 333-357, 363-418.

Plaintiff was hospitalized from May 27, 2011, until May 30, 2011, after experiencing chest pains while attempting to clean a chicken coup. Tr. 419-421. His pain partially resolved via the use of Aspirin and Nitroglycerin. Serial cardiac enzymes and an EKG were negative. On discharge, Plaintiff had no chest pain and a normal heart-lung examination. His diagnoses were 1) chest pain secondary to coronary artery disease, 2) coronary artery disease with 50% calcified

---

[3]The undersigned notes the fact that Plaintiff's childhood cancer treatment has placed him at increased risk of developing a number of health problems as he ages. However, it is not the predisposition to these impairments or even the diagnosis of them that is of concern in this case. Rather, it is the severity, or lack thereof, of the impairment that is pivotal.

stenosis of left anterior descending artery just past the first diagonal branch, small diffuse disease in the right coronary artery and 80% PDA lesion in an already small vessel with an ejection fraction rate of 60% based on angiogram, 3) type 2 diabetes, insulin-requiring, poorly controlled, and 4) severe mixed hyperlipidemia. He was discharged with prescriptions for Metformin, Humalog, Gabapentin, Crestor, Nexium, Insulin, Tramadol, sublingual Nitroglycerine, and Aspirin. There is, however, no indication that Plaintiff's condition necessitated stent placement or other surgical intervention. And, no physical limitations or restrictions were imposed.

On February 7, 2011, Dr. Bill Payne, a non-examining, consultative doctor completed an RFC assessment. Tr. 329-331. After reviewing Plaintiff's medical records, he concluded Plaintiff's impairments were non-severe. This assessment was affirmed by Dr. Stephen Whaley on May 8, 2011. Tr. 358-362.

The evidence also reveals that Plaintiff's subjective reports of activities is inconsistent with his claim of disability. He reported the ability to perform all self-care activities without assistance, cook, perform household chores (with breaks), walk at least once a day, drive a car, shop in stores, handle money, go fishing (although for shorter periods), spend time with others, watch television, and watch his children play sports (with some limitations associated with sitting in the bleachers). Tr. 183, 201 Clearly, these are not the activities you would expect of a disabled individual. *See Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir. 1999) (activities such as driving his wife and children to work and school, shopping, visiting his mother, watching television, and playing cards were inconsistent with complaints of disabling pain).

While we note Plaintiff's history of diabetes with some evidence of neuropathy, we also note the absence of motor function deficits or end organ disease. In fact, physical exams revealed

8

no neurological deficits and a normal gait. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). And, aside from alleging tingling and numbness on one occasion, Plaintiff denied experiencing these symptoms. Further, based upon Plaintiff's stable diabetes in 2009 when compliant with treatment, we agree with the ALJ's determination that Plaintiff's conditions was amenable to consistent treatment. *See Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996) (the claimant's medically determinable impairments of diabetes, hypertension, and ulcers were controlled with diet and medication, and therefore, not severe and not disabling).

With regard to his coronary artery disease, the blockage did not require stenting, instead responded to conservative treatment via Aspirin and sublingual Nitroglycerine. *See id*. Further, Plaintiff's doctors assessed no functional limitations. *See Baldwin v. Barnhart*, 349 F.3d 549, 557 (2003) (physicians noted few abnormalities, and none of Plaintiff's independent physicians restricted or limited P's activities). Instead, and actually encouraged exercise, weight loss, diet control, and smoking cessation.

Lastly, Plaintiff alleges that the ALJ failed to consider his impairments in combination. However, as stated above, the ALJ clearly considered all of his impairments. *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994). Accordingly, we find substantial evidence to support the ALJ's determination that Plaintiff's impairments are non-severe.

## V. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision

should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 6th day of October 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE